# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
DEC 1 0 2013
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of Installing and Using a Tracking Device On )
*(Describe person or property specifically)* )
1992 Chrysler Town and Country Van )
California License Plate: 7CQY257 )
VIN: 1C4GH54RXNX297015 )
)
)

Case No.

**'13 MC 1455**

## APPLICATION FOR TRACKING DEVICE WARRANT

I am a <u>federal law enforcement officer</u>. Based on the facts set forth in the attached and incorporated affidavit, I have probable cause to install and use a tracking device as set forth above to locate the following pursuant to Fed. R. Crim. P. 41(c)
*(check one or more)*

    X  evidence of a crime;
    X  contraband, fruits of crime, or other items criminally possessed;
    X  property designed for use, intended for use, or used in committing a crime; or
    X  a person to be arrested or a person who is unlawfully restrained;

in connection with violations of <u>8 U.S.C. section 1324</u>.

    X  I request delayed notice of the warrant pursuant to Fed. R. Crim. P. 41(f)(2) & (3) and 18 U.S.C. § 3013a, for reasons set forth in the affidavit *(check if applicable)*.

_____
APPLICANT'S SIGNATURE

Jorge Gutierrez, United States Border Patrol Agent
PRINTED NAME AND TITLE

Sworn to before me and signed in my presence:

12/10/13 @ 10:00 a.m.        at        San Diego, California
DATE AND TIME ISSUED                    CITY AND STATE

_____        _____
NAME AND TITLE OF JUDICIAL OFFICER     SIGNATURE
U.S. Magistrate Judge

**AFFIDAVIT**

I, Jorge Gutierrez, Border Patrol Agent (BPA), United States Border Patrol (USBP), being duly sworn, hereby state:

### A. Background and Experience

1. Your affiant in this matter, United States Border Patrol Agent Jorge Gutierrez, has been a Border Patrol Agent with the United States Border Patrol (USBP) since June of 2007. Your affiant is currently assigned to the Chula Vista Border Patrol Station's Intelligence Division (CVID). The CVID is responsible for developing, analyzing and disseminating operational, tactical and strategic intelligence through the use of sensitive investigative techniques, criminal informants, and questioning of defendants and material witnesses. This is done in an effort to develop actionable intelligence relating to the smuggling of undocumented aliens, principals involved in alien smuggling, alien smuggling organizations and their modus operandi.

2. Your affiant has been assigned to the CVID on two separate rotations. The first CVID rotation occurring between January 2009 and February of 2011, and the current CVID rotation started on October 2012. Between January 2009 and June 2010, your affiant was assigned to the Alien Smuggling Identification and Deterrence (ASID) unit, within the CVID. The ASID unit is tasked with identifying and pursuing the prosecution of alien smugglers with evidence learned from material witness interviews, phone data analysis, and field intelligence. Between July 2010 to February 2011, the affiant worked with the CVID abatement team, where he deployed electronic tracking devices on vehicles, and remotely tracked the device utilizing computer software, on vehicles associated to ongoing alien smuggling cases.

3. From October of 2012 to March of 2013, your affiant performed law enforcement duties as a part of Operation Misguided (OPMG) at the San Ysidro and Otay Mesa Ports of Entry as a sub-assignment to the CVID. Through intelligence analysis and other investigative techniques, your affiant was responsible for enforcement activity which led to multiple arrests of alien smugglers and seizures of documents, cell phones and vehicles used in the commission of alien smuggling. While assigned to OPMG, your affiant collaborated with the Office of Field Operations (OFO), Immigration and Customs Enforcement (ICE), Diplomatic Security Service (DSS), and several other state and local agencies throughout several investigations.

4. From November 2011 to March 2012, your affiant was assigned as a temporary Supervisory Border Patrol Agent, and was responsible for a team consisting of twelve to fifteen Border Patrol Agents. During this time, your affiant was responsible for overseeing employee schedules, assignments, inventorying sensitive equipment, and implementing strategic plans to effectively manage the United States and Mexico border security his team was responsible for. Your affiant was also responsible for analyzing criminal and immigration histories of detainees and determining their disposition in accordance to the United States Attorney's Office

5. To date, your affiant is assigned to the CVID abatement team, to which he works in a team that targets alien smugglers for criminal prosecution. CVID reacts to alien smuggling events, and begins short-term criminal investigations, with the goal of disrupting, dismantling and defeating criminal organizations responsible for alien smuggling.

6. Your affiant has received advanced training throughout his career, to include surveillance, interrogation, highway interdiction, hidden compartment, detecting deception, prosecution, and advanced Border Patrol Academy training. Your affiant received an Associated Degree in Criminal Justice from Southwestern College in 2012.

### B. Purpose of Affidavit

7. This affidavit is submitted in support of an application for a warrant authorizing the installation and use of a tracking device on a 1992 Chrysler Town and Country bearing California license plate 7CQY257 (VIN: 1C4GH54RXNX297015), which constitutes property designed for use, intended for use, or used in committing a crime in violations of federal criminal law, namely, Title 8, United States Code § 1324(a)(1)(A)(ii) (transportation of illegal aliens). The vehicle is owned by Rosemberg DIAZ-Constantino a suspected load driver recruiter and alien smuggling coordinator.

### C. Basis of Affidavit

8. Based on the information below, I have probable cause to install and use a tracking device to locate or produce: evidence of a crime, contraband, fruits of a crime, or other items illegally possessed; property designed for use, intended for use, or used in committing a crime; or a person to be arrested in violations of Title 8, United States Code § 1324, Alien Smuggling.

9. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from oral and written reports by other law enforcement officers, interviews, and public records, database checks, phone analysis, and information gained through my training and experience. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish the foundation for the requested warrant.

### D. Probable Cause

10. On November 29, 2013, Border Patrol Agents assigned to the Brownfield Border Patrol Station received a citizen's report indicating that at approximately 3:15 p.m., a Chrysler

Town and Country mini-van bearing California license plate 7CQY257, picked up two suspected illegal aliens on Otay Lakes Road, San Diego, California. A registration check on the vehicle revealed that the registered owner of vehicle is Rosemberg DIAZ-Constantino, The address of the registered owner is 4129 43rd Street Apt 4, San Diego, California 92105. The reporting party described the vehicle as being maroon in color and wood paneling along the side.

11. On December 2, 2013, Border Patrol Agents assigned to the Chula Vista Border Patrol Station's Intelligence Division (CVID) arrested Andres GALLEGOS-Del Carmen for picking up three Undocumented Aliens (UDA), in violation of Title 8, United States Code 1324 – Alien Smuggling, at the Iris Trolley Station located at 3120 Iris Avenue, San Diego, California 92154. GALLEGOS claimed, in a post-arrest interview, to have been recruited to smuggle by an individual known to him as "Rosember DIAZ."

    a. At approximately 6:15 a.m., the three UDAs were observed entering the United States by Border Patrol agents assigned to the Chula Vista Border Patrol station, approximately a half mile east of the Otay Mesa, California, Port of Entry. The group of UDAs were observed traveling west towards the intersection of Enrico Fermi Drive and Via de la Amistad, San Diego, California. At this time, plain-clothes CVID agents took over surveillance of the three suspected UDAs. The trio continued to walk west on Via de la Amistad and stopped at the Metropolitan Transit System (MTS) bus stop located near the intersection of Via de la Amistad and Roll Drive, San Diego, California.

    b. A short time later, the group of suspected UDAs boarded MTS bus 2308, destined to arrive at the Iris Trolley Station. CVID agents kept constant surveillance on the bus as it departed the MTS bus stop and arrived at the Iris Trolley Station. Agent observed the three suspected UDAs exit the bus, walk around and loiter at the bust stop for approximately 50 minutes. One of the individuals, later identified at Victor HERNANDEZ-Ochoa, was observed speaking on a cellular telephone and looking towards the parking lot as if he was looking for a vehicle.

    c. At approximately 8:10 a.m. agents observed the three suspected UDAs get

into a black Ford Expedition bearing California license plate number 7BFC408. At this time, agents performed a vehicle stop in the parking lot of the Iris Trolley Station. The three suspected UDAs, later identified as Victor HERNANDEZ-Ochoa, Josue MENDOZA-Hernandez, and Antolin Raul MARTINEZ-Cortes admitted to CVID agents that they are citizens and nationals of Mexico without any immigration documents allowing them to enter or remain in the United States legally. The driver of the vehicle, Andres GALLEGOS-Del Carmen, was placed under arrest for violation of Title 8, United States Code, Section 1324 – Alien Smuggling. All four individuals were transported to the Chula Vista Border Patrol Station for processing.

   d. During a post-arrest interview, undocumented aliens MENDOZA and MARTINEZ stated that they made smuggling arrangement with an unknown smuggler to be smuggled into the United States. MENDOZA and MARTINEZ stated that they were each going to pay $5,000.00 USD to be smuggled to Los Angeles, California

   e. During a post-arrest interview of the suspected foot guide, Victor HERNANDEZ-Ochoa, he stated that he agreed to lead MENDOZA and MARTINEZ and be remotely guided via cellular telephone by another smuggler in exchange for paying a reduced smuggling fee. HERNANDEZ stated that he was going to receive a reduction of $500.00 USD from the smuggling fee for helping smuggle the two other UDAs. HERNANDEZ stated that he was being charged $5,500.00 USD to be smuggled to a San Diego, California neighborhood known as "Clairemont."

   f. During a post-arrest interview of the load driver, Andres GALLEGOS Del Carmen, he stated that he was recruited to pick up UDAs by an individual known to him as "Rosember DIAZ." GALLEGOS stated that he and "Rosember DIAZ" work together at the Onami Seafood Buffet, located at 1640 Camino del Rio North #341, San Diego, California 92108. GALLEGOS stated that "Rosember DIAZ" asked him if he could pick up two UDAs because the normal load driver, known to GALLEGOS as "Raul MARTINEZ", was not available to pick them up. GALLEGOS stated that he agreed to pick up the UDAs because he does not get paid well and does not have a lot of money. GALLEGOS admitted that if he was

1. successful in picking up the UDAs, he was going to take them to "Rosmeber DIAZ'" apartment located at 4129 43rd Street Apt 4, San Diego, California. GALLEGOS stated that during the smuggling event, "Rosmeber DIAZ" was calling him with directions on where to pick up the UDAs. GALLEGOS described "Rosmeber DIAZ" as having only one eye because he lost it in an accident as a youth.

   g. At the time of his arrest, GALLEGOS was in possession of a cellular telephone. GALLEGOS gave agents written and verbal consent to search his cellular telephone. A search of his cellular telephone revealed a Facebook account to an individual named "Rosember Chembers DIAZ." Agents asked GALLEGOS if the picture of the person on the Facebook account was "Rosemberg DIAZ," to which he replied "Yes." GALLEGOS stated that "Rosember DIAZ'" roommate and load driver, "Raul MARTINEZ" is not his Facebook friend, but is "Rosember DIAZ'" Facebook friend. A search of "Rosember DIAZ'" Facebook friends revealed an account for an individual named "Raul MARTINEZ." GALLEGOS was asked if the individual in the picture on "Raul MARTINEZ" account was the individual known to him as "Raul MARTINEZ," to which he replied "Yes."

   h. A search of "Raul MARTINEZ'" Facebook page showed several pictures of a Maroon-colored Chrysler Town and Country mini-van with wooden paneling and gold-colored wheels, matching the description of the vehicle observed picking up undocumented aliens on November 29, 2013. The pictures did not display a license plate number.

12. On December 4, 2013, at approximately 11:15 a.m,, off-duty Border Patrol Agent Michael Stevens, observed the 1992 Chrysler Town and Country bearing California license plate number 7CQY257, pick up four suspected UDAs on Otay Lakes Road, San Diego. Otay Lakes Road is an east to west road that runs parallel to the United States/Mexico border and is separated by the Otay Mountains. Otay Lakes Road is a common pick-up location for alien smugglers to pick up UDAs that have recently crossed the border into the United States.

   a. A California Department of Motor Vehicle (DMV) record check on the vehicle showed that it is owned by Rosemberg DIAZ-Constantino and the address is 4129 43rd

Street Apt 4, San Diego, California, 92105. Agents followed the vehicle but shortly after initiating mobile surveillance of the vehicle, Agents lost sight of the vehicle and were unable to locate it.

      b.    After losing the vehicle, Agents went to the registered owner's address, in hopes of locating the vehicle. Agents set up perimeter surveillance on December 4, 2013, near 4129 43rd Street, San Diego, California, 92105. The vehicle eventually showed up later that evening, at approximately 10:00 p.m. Agents have conducted static surveillance at this location since December 2, 2013. Agents have seen the vehicle at the location as recently as December 8, 2013. Agents have observed an individual that resembles "Rosember DIAZ," who is missing an eye, and "Raul MARTINEZ" at the apartment.

    13.    Based on the post-arrest statement provided by GALLEGOS in which he stated that he was recruited by the smuggler he knows as "Rosember DIAZ", coupled with his identification of a picture of "Rosember DIAZ" and the use of the 1992 Chrysler Town and Country bearing California license plate number 7CQY257, registered to DIAZ in two suspected smuggling events, your affiant believes that DIAZ coordinated the smuggling event, which occurred on December 2, 2013, when GALLEGOS was arrested in violation of Title 8, United States Code § 1324; alien smuggling.

    14.    Agents conducted record checks of databases, on both DIAZ and "Raul MARITNEZ" but were unable to positively identify DIAZ or "Raul MARTINEZ"; due to the lack of archives on DIAZ and "Raul MARTINEZ", Agents were unable to establish alienage.

    15.    Following the issuance of this warrant, United States Border Patrol agents will install a tracking device on the 1992 Chrysler Town and Country, bearing California license plate 7CQY257, normally found parked on the street near residence 4129 43rd Street, San Diego, California, where DIAZ currently resides. After the tracking device is installed and during the period of authorized monitoring, it will be occasionally necessary to gain access to the vehicle to maintain the tracking device; including changing the battery, and it will also be necessary when the period of authorized monitoring expires to gain access to the vehicle to remove the tracking

device. Moreover, notifying DIAZ of the installation and use of a tracking device in his vehicle will jeopardize the investigation and will defeat the purpose of the warrant.

16. Pursuant to Fed. R. Crim. P. 41(b)(4), the tracker device will be used to track the 1996 Chrysler Town and Country, bearing California license plate 7CQY257, while is it located within the Southern District of California. If the vehicle travels outside of the Southern District of California, then the tracker device will be also used to track the vehicles outside the district.

17. Pursuant to Fed. R. Crim. P. 41(f)(2)(C) and (f)(3), and 18 USC 3103a, I request permission to delay service of the warrant for 90 days after use of the tracking device has ended– that is, until April 24, 2014, because there is reasonable cause to believe that providing immediate notice of the warrant may have an adverse result as defined by 18 USC 2705. Specifically, the notification will seriously jeopardize the investigation.

18. No tangible property, or wire or electronic communications, shall be seized pursuant to the warrant. To the extent the tracking (GPS or other) information may constitute stored electronic information under Title 18, United States Code, Chapter 121, it is believed 18 USC 2703 (c)(1)(A) expressly authorizes the retention ("seizure") by agents of such information. To the extent it may not, there is reasonable necessity for the "seizure" of such information. 18 USC 3103a(b)(2). Not allowing agents to retain the information so they may determine where the object above travels and has traveled would defeat the only purpose of the warrant and render the warrant useless. No stored wire or electronic information shall otherwise be seized pursuant to the warrant.

19. WHEREFORE, I request that the court issue a warrant authorizing the installation and use of a tracking device as set forth above.

*[signature]*
Jorge Gutierrez
Border Patrol Agent
U.S. Border Patrol

SWORN TO BEFORE ME AND
SUBSCRIBED IN MY PRESENCE:

DATE: 12/10/13

SIGNATURE: *[signature]*
U.S. Magistrate Court Judge
United States District Court
Southern District of California